**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| ARTHUR L. HAIRSTON, SR., | Civil No.: 07-1945 (JBS) |
| Petitioner, |  |
| v. | **O P I N I O N** |
| ANTHONY BOYCE, et al., |  |
| Respondents. |  |

**APPEARANCES:**

    ARTHUR L. HAIRSTON, SR., Petitioner <u>Pro</u> <u>Se</u>
    #03705-087
    F.C.I. Fort Dix
    P.O. Box 38
    Fort Dix, NJ 08640

**SIMANDLE**, District Judge

On or about April 25, 2007, petitioner, Arthur L. Hairston ("Hairston"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] in which he challenges a prison disciplinary proceeding. Hairston asks the Court to expunge the disciplinary finding and sanctions imposed against petitioner.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:

    (a) Writs of habeas corpus may be granted by the
    district courts within their respective jurisdictions

    (c) The writ of habeas corpus shall not extend to a
    prisoner unless-   (3) He is in custody in violation
    of the Constitution or laws or treaties of the United
    States.

The named respondents are the Federal Bureau of Prisons ("BOP") and Anthony Boyce, a disciplinary hearing officer ("DHO"). Respondents answered the petition on November 16, 2007,[2] and provided a copy of the pertinent administrative record. (Docket Entry No. 15). On November 30, 2007, Hairston moved for summary judgment. (Docket Entry Nos. 16, 17). This Court denied by Order dated January 3, 2008, but allowed for consideration of Hairston's summary judgment arguments in its adjudication of this habeas petition. (Docket Entry No. 19).[3]

## I.   BACKGROUND

In his petition, Hairston challenges a prison disciplinary finding, dated April 20, 2007, on the grounds that the proceedings did not comport with due process under the Fifth Amendment and certain federal regulations governing disciplinary proceedings in federal prison. Hairston alleges that an incident report was issued on March 8, 2007, charging him with violating

---

[2] On May 22, 2007, this Court dismissed the petition without prejudice because it appeared that Hairston had not exhausted his administrative remedies before proceeding in federal court. (Docket Entry Nos. 6, 8). On September 6, 2007 and September 10, 2007, Hairston filed a motion to re-open his case and a supplement in support of his petition. He alleged that he had exhausted his administrative remedies. (Docket Entry Nos. 9, 10). On October 19, 2007, this Court re-opened the case and directed respondents to answer the petition. (Docket Entry Nos. 11, 12).

[3] Hairston filed a letter on or about January 7, 2008, protesting the consideration of his summary judgment motion as a responsive pleading. (Docket Entry No. 20).

Code 112.  Hairston states that the incident report incorrectly showed the date of the incident as February 4, 2007, instead of the actual date of the incident, March 4, 2007.  (Petition, at ¶¶ 1-2).

Consequently, reporting officer A. Moschello, revised the incident report on March 9, 2007 to show the correct date. Hairston complains that the revised report was not given to him until 9:20 p.m. on March 9, 2007, in violation of the 24-hour notice requirement.  (Petition, at ¶ 3).

On March 12, 2007, Hairston went before the Unit Disciplinary Committee ("UDC").  The UDC allegedly referenced the initial incident report (which was in error).  Hairston claims that the UDC violated the policy that a UDC hearing be held within 72 hours after the staff becomes aware of an incident. Hairston further alleges that he was illegally before the UDC because the correct incident report was never used.  (Petition, at ¶ 4).

Hairston alleges that Counselor Sanchez and Case Manager Brown changed the date from February 4, 2007 to March 4, 2007, on the initial incident report at the March 12, 2007 UDC hearing. Hairston contends that this correction violates policy because only the reporting officer can change an incident report. (Petition, at ¶ 5).

On March 12, 2007, Hairston received notice of a hearing before a Disciplinary Hearing Officer ("DHO"). The alleged violation on the incident report stated that petitioner was charged with "failing to perform work as instructed by supervisor/lying to staff." DHO Anthony Boyce allegedly revised the violation. (Petition, at ¶ 6).

Hairston states that he filed an objection to the UDC hearing and the DHO hearing. (Petition, at page 4). However, he further admits that he has not pursued the requisite administrative remedies before filing this habeas petition because the "the administrative remedy process will not aid in this serious, gross, blatant disregard for policy and the United States Constitutional Rights of the Petitioner." (Petition, at page 5).

In his motion to re-open, however, Hairston argued that he had "run the administrative remedy process," in contrast to the initial allegations in his petition. In his supplement to his petition (Docket Entry No. 14), Hairston states that he filed a BP-11 administrative remedy on August 7, 2007. There was no response to his grievance until October 24, 2007. Respondents confirm that petitioner exhausted his administrative remedies before re-opening this matter. (See Respondents' Brief at page 10).

The record provided by the respondents in answer to the petition shows that, on March 8, 2007, Hairston was issued an incident report, No. 1574979, charging him with the unauthorized use of narcotics, a violation of Code 112.  See 28 C.F.R. § 541.13, Table 3 (BOP chart of code offenses and prohibited acts and available sanctions).  The incident report stated that Hairston had tested positive for opiates/morphine in a urine sample provided by Hairston on March 4, 2007.  See Declaration of Tara Moran ("Moran Decl.") at Exhibit B - Incident Report No. 1574979.

The reporting officer, A. Moschello, wrote:

> On 3/08/07, at approximately 12:30 p.m., I received written notification from National Toxicology which stated that specimen number B01908753 was assigned to the urine sample for Inmate Hairston, A. #03705-087 provided on 3-04-07 at 2:22 a.m.  Health Services was notified and informed this office that medication was not prescribed to Inmate Hairston, A. Which resulted in a positive test for Opiates/Morphine.

(Moran Decl. at Ex. B, Incident Report, Block 11).

Respondents state that the original incident report, dated March 8, 2007 at 12:50 p.m., had erroneously stated in Block 4 of the report that the incident occurred on February 4, 2007 instead of the actual date, March 4, 2007.  (See Moran Decl. at Exhibit B, Incident Report, Block 4).  Reporting Officer A. Moschello, who had prepared and signed the first report, signed a rewritten report that had corrected the date in Block 4 by typing in the

5

date March 4, 2007.  (See Moran Decl., Exhibit C, Revised Incident Report and Regional Director's Response).

Hairston was provided the original report on March 8, 2007. (Moran Decl., Ex. B at Blocks 14 and 16).  He was provided the rewritten incident report on March 9, 2007.  (Moran Decl., Ex. C at Blocks 14 and 16).

The record also shows the chain of custody form for the urine sample provided by Hairston on March 4, 2007.  The form indicates that Hairston's register number is 03705-087 and that he had provided specimen number B01908753.  Hairston signed the Inmate Certification at the bottom of the chain of custody form, verifying that the specimen was his own, that he provided it to the collector, that the specimen was sealed in his presence, and that the information on the form and label was correct.  (Moran Decl., Ex. B, Chain of Custody for Drug Analysis).

The testing facility, National Toxicology Laboratories, Inc., tested the sample specimen B01908753 and issued a Laboratory Report showing that the specimen tested positive for opiates/morphine.  (Moran Decl., Ex. B at Laboratory Report).

Investigator Lt. C. Fields conducted an investigation of the incident on March 8, 2007 at 2:20 p.m.  Based on the written entries in the incident report and the test results received from the National Toxicology Laboratories and medical department, Lt. Fields concluded that the incident report was true as written.

6

He placed Hairston in the Special Housing Unit that same day, on March 8, 2007 at approximately 2:30, and referred the matter to the Unit Disciplinary Committee ("UDC").

On March 12, 2007, three working days after the staff became aware of the incident, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") because the sanctions for the prohibited act charged exceeded that which could be imposed at the UDC level if petitioner was found to have committed the prohibited act.  The UDC notice of a DHO hearing contained the correct Code 112 violation, but erroneously stated that the violation was "failing to perform work as instructed by the supervisor/lying to staff."  However, the Incident Report clearly provided notice of the alleged violation and Code number, plus a detailed description of the alleged violation.

On April 20, 2007, a DHO hearing was convened.  The DHO handwrote "use of any narcotic" as the alleged violation on the UDC notice.  The DHO then determined that Hairston had committed the prohibited act, violation of Code 112, use of narcotics, and sanctioned him to 60 days disciplinary segregation, 40 days disallowance of good conduct time, 80 days forfeiture of non-vested good conduct time, 120 days loss of commissary and telephone privileges, and 18 months loss of certain visitation privileges.  (Moran Decl., Ex. B, DHO Report, Sections IV and VII).  Specifically, the DHO made the following findings:

7

I find on or about March 4, 2007, at approximately 2:22 a.m. you provided a urine specimen for analysis testing within the confines of the Federal Correctional Institution, Fort Dix, New Jersey, and upon analysis it was determined you had used Opiates/Morphine not Prescribed by Medical Staff.

This decision is based on the evidence/facts provided before me which is documented in the written report provided by the reporting employee. The employee documented,

"On 3/08/07, at approximately 12:30 p.m., I received written notification from National Toxicology which stated that specimen number B01908753 which was tested under Random use had tested positive for Opiates/Morphine. Specimen number B01908753 was assigned to the urine sample for Inmate Hairston, A. #03705-087 provided on 3-04-07 at 2:22 a.m. Health Services was notified and informed this office that medication was not prescribed to inmate Hairston, A. Which resulted in a positive test for Opiates/Morphine."

Toxicology Laboratories chain of custody for drug analysis for specimen number B01908753 supports the written report submitted as it bears the same identification number as documented within the written report as well as your name and registration number clearly shows the date it was collected on 03-04-07. The collector certified the specimen identified on this form is the specimen presented to him by the inmate providing the certification below that bears the same identification number as set forth above and it has been collected, labeled and sealed in accordance with collection procedures provided above. This document also contains your certification, specifically you certified the specimen accompanying this form was yours, you provided it to the collector. You further certified the specimen was sealed in your presence and all the information on the form and the label were correct. This document bears your signature which in fact was identified by you in the discipline hearing.

Toxicology laboratories test result sheet for specimen number B01908753 support the written report as it bears the same identification number as documented on the Chain of Custody for Drug Analysis as well as in the written report submitted. Furthermore this document clearly reveals this specimen did test positive for Opiates/Morphine.

Memorandum submitted by A. Moschello documents Medical Staffs' review of your Medical records and their

>    determination you were not prescribed any medication that
>    would test positive for Opiates/Morphine.
>
>    The DHO took into consideration your statement that since
>    there was a pen and ink correction made to element 4
>    correcting the date from 2-4-2007 to 3-4-2007, and on the
>    BP-294 had the incorrect alleged violation, that the
>    incident report should be expunged.  The DHO finds that
>    these are typographical errors and the Unit Disciplinary
>    Committee was within the guidelines to make a simple pen and
>    ink correction.  These corrections in no way impeded your
>    rights or was against policy.  The copy of the incident
>    report was given to you in a timely manner and you knew what
>    the prohibited act was with which you are being charged.
>    The DHO finds that you have every reason to try this tactic
>    in order to have the charges against you expunged.  You have
>    everything to gain and nothing to lose in that effort.
>    However, I find the staff members involved had every right
>    to make a simple correction and the charge warranted the
>    continuation of the hearing.  During the hearing the DHO
>    asked if you denied the facts as written in section eleven
>    and you chose to remain silent to the facts.
>
>    Based upon the greater weight of evidence provided before
>    me, your actions are consistent with Code 112; Use of Drugs
>    not Prescribed by Medical Staff.

(Moran Decl., Ex. B at DHO Report, Section V).

The DHO Report provided Hairston with a written statement of the evidence relied upon and the reasons for the disciplinary sanctions imposed.  (<u>Id</u>. at Sections V and VII).

## II.  CLAIMS PRESENTED

Hairston claims that he was denied procedural due process in violation of the Fifth Amendment because the original incident report was changed to correct the date of the incident and the rewritten report was provided to him more than 24 hours after the staff became aware of the incident.

9

Hairston also claims that the UDC hearing was held more than three days after staff became aware of the incident, and the notice advising him of the DHO hearing stated the wrong alleged violation.  The DHO crossed out the erroneous charge on the notice form and wrote in the correct charge.

Respondents contend that there was no deprivation of due process and that there was some evidence to support the discipline imposed.

### III.  DISCUSSION

A.  Standard of Review

Hairston seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

10

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because one of the charges was designated as a "greatest" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written

11

notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

   1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may

not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

   Here, Hairston essentially argues that the Incident Report is invalid because it corrected the date of the incident on the

13

report and the rewritten report was not delivered to Hairston within the time period established by BOP rules.  He also asserts that his UDC hearing was not timely held, and that the UDC wrote the wrong charge when it referred the matter to the DHO.  This Court finds all of petitioner's claims to be meritless.

First, this Court notes that the procedures set forth in <u>Wolff</u> and <u>Von Kahl</u>, were followed in all respects.  Hairston was provided with advance written notice of the charges against him, giving him sufficient time to prepare a defense for an appearance at the disciplinary hearing, call witnesses and present evidence.  He also received a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary sanctions.  <u>See</u> <u>Wolff</u>, 418 U.S. at 563-71.  <u>See</u> <u>also</u> Moran Decl., Ex. B, Incident Report and DHO Report.  Thus, the record does not support any claim that Hairston was denied due process.

Second, there is no merit to Hairston's claim that the one day delay in providing him with the rewritten Incident Report noting the correct incident date as March 4, 2007 caused any deprivation of due process.  On March 8, 2007, Hairston was given the original Incident Report that had the date of "2-4-2007" listed in Block 4 as the Date of Incident.  The original Incident Report notified petitioner of the incident alleged and the code violation in Blocks 9 and 10, respectively, as "Use of any

14

narcotic" and Code 112.  In Block 11, which provides the Description of Incident, Hairston was informed as follows:

> On 3/08/07, at approximately 12:30 p.m., I received written notification from National Toxicology which stated that specimen number B01908753 was assigned to the urine sample for Inmate Hairston, A. #03705-087 provided on 3-04-07 at 2:22 a.m.  Health Services was notified and informed this office that medication was not prescribed to Inmate Hairston, A. Which resulted in a positive test for Opiates/Morphine.

(Moran Decl. at Ex. B, Incident Report, Block 11).  Thus, although the wrong date may have been entered initially in Block 4, Block 11, which describes the incident, clearly identifies the pertinent dates in question, that is March 4, 2007 when the urine sample was provided by petitioner, and March 8, 2007, when the toxicology report was received by the staff.

There also does not appear to be any significant delay in providing the initial and rewritten incident reports to Hairston. This Court finds no due process violation based on Hairston's allegation that a corrected Incident Report (*i.e.*, changing th date of 2-4-2007 to 3-4-2007) was not delivered to him timely. The initial Incident Report was delivered to Hairston on the very day it was prepared and the same day that the positive urine test for narcotics was received by staff.  The rewritten Incident Report, correcting the date of incident as March 4, 2007 instead of February 4, 2007, was given to Hairston the very next day, on

15

March 9, 2007.  Thus, there does not appear to be any violation of the BOP rules for timely notice.

Morever, the UDC hearing was conducted within three work days from the date that the staff learned of the incident. Hairston offers no argument or support that the one day delay in providing his the rewritten report with the date correction impaired his ability to present a defense at his UDC hearing and DHO hearing.

Likewise, there was no impediment to due process by the UDC's notice of the DHO hearing, which did not list the correct alleged violation.  The notice did provide the correct Code Violation of 112.  Moreover, the Incident Report correctly identified the alleged violation as the "use of any narcotic" in Block 9 of the report.  Hairston cannot reasonably suggest that he had no notice or idea as to the charged violation against him.

Moreover, this Court agrees with the respondents that typographical errors in an incident report do not support a due process violation as alleged here.  See Morales v. DeRosa, 2005 WL 2217018, *4 (D.N.J. Sept. 12, 2005)(Simandle, J.).

Finally, there is no evidence to indicate that the BOP violated its own policies as argued by Hairston.  Hairston was promptly notified of the charge against him, on March 8, 2007, so as to give him an opportunity to respond.  The Incident Report described the specific conduct in detail and provided the Code

16

violation to inform Hairston of the charge against him.  Thus, both the initial and rewritten Incident Reports that were delivered to petitioner on March 8, 2007 and March 9, 2007, respectively, were fully compliant with the requirements of due process as set forth in Wolff.  The fact that insignificant typographical errors occurred in the first Incident Report and the UDC notice of DHO hearing does not offend due process.

Accordingly, this Court concludes that Hairston has not demonstrated any denial of due process.  Hairston was charged with a Code 112 violation, and he was fully informed as to the nature and severity of this charge from the Incident Report.  These claims will be denied for lack of merit.

2.  *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other

17

      standard greater than some evidence applies in this
      context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing."  Id. at 457.

    Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the following evidence in its determination that petitioner used unauthorized narcotics: (1) Hairston had provided a urine sample on March 4, 2007; (2) the urine specimen provided by Hairston tested positive for opiates/morphine; (3) the Medical Staff confirmed that petitioner was not authorized to take any medication that would give a positive result in a urine test; and (4) the chain of custody of the urine specimen was not compromised nor was there any evidence that the laboratory test of the urine specimen was unreliable.  In fact, Hairston had signed a certification as to the chain of custody confirming that it was his urine sample he gave to the collector and that the collector sealed the specimen in his presence.

    Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without

support or otherwise arbitrary." Hill, 472 U.S. at 457. There was more than sufficient evidence to support the DHO finding that Hairston had violated Code 112, use of an unauthorized narcotic.

Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by petitioner, except his self-serving argument about insignificant errors and corrections to the incident report and UDC notice of DHO hearing, this Court finds that Hairston's right to due process was not violated by the determination of the DHO. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Hairston has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, this habeas petition will be denied for lack of merit.

## **CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated: **May 16, 2008**